BURLINGTON UNITED METHODIST FAMILY SERVICES, INC., Children's Home of Wheeling, Inc., Elkins Mountain School, Inc, and the Pressley Ridge School, Inc., Plaintiffs,

v.

Nancy ATKINS, Commissioner, West Virginia Bureau for Medical Services, and Paul L. Nusbaum, Secretary, West Virginia Department of Health and Human Resources, Defendants.

No. CIV.A. 2:02–0983.

United States District Court, S.D. West Virginia, Charleston Division.

Oct. 15, 2002.

Jeffrey K. Matherly, Bowles Rice McDavid Graff & Love, Charleston, WV, for Burlington United Methodist Family Services, Inc., Children's Home of Wheeling, Inc., Elkins Mountain School, Inc.

Charles M. Johnson, Robinson & McElwee, Charleston, WV, Charles M. Johnson, Dinsmore & Shohl, Charleston, WV, for Pressley Ridge School, Inc.

Darrell V. McGraw, Jr., Kimberly Stitzinger Jones, WV Dept. of Health and Human Resources, Charleston, WV, for Nancy Atkins, Paul L. Nusbaum.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are Defendants' motion to dismiss for failure to state a claim upon which relief may be granted and Plaintiffs' motion for a preliminary injunction. The Court **GRANTS** Defendants' motion in part and **DISMISSES** all counts of the Complaint except *Counts* IV and VI, alleging a violation of constitutional rights of equal protection and a violation of civil rights. *Count* VI is retained solely as it pertains to the equal protection count. Because *Count* I for injunctive relief is **DISMISSED**, Plaintiffs' motion for a preliminary injunction is **DENIED** as moot.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are four providers of residential and community-based mental health services for seriously troubled children in West Virginia. Reimbursement for the residential child care services is almost entirely through the Medicaid program, pursuant to Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.* Defen-

dants are the heads of two state agencies. The West Virginia Bureau for Medical Services ("BMS") implements, oversees, and regulates the Medicaid Program in West Virginia. The West Virginia Department of Health and Human Services oversees BMS.

The West Virginia Medicaid State Plan provides a prospective cost-based reimbursement system for Behavioral Health Residential Child Care Facilities. As explained in the Complaint, under the Plan, providers' reimbursement rates are adjusted by BMS and DHHR every six months based on cost reports filed by the providers. The agencies calculate the weighted average cost of all providers for the described level of residential service. Individual providers are then generally reimbursed at a rate that is the lesser of the rate based on their actual costs or the calculated weighted average costs for all providers within each described level of service. Plaintiffs complain Defendants' method is not based on a determination of what the costs of an efficient or economically operated facility would be and that it results in wide rate variations from period to period. Plaintiffs allege they have complained in writing protesting the rates, but Defendants have responded that the administrative appeals process is available only to correct computational or reporting errors, not the rate-setting method.

Plaintiffs request an injunction reinstating the rates effective October 1, 2001 through March 31, 2002. They allege violations of 42 U.S.C. § 1396a(a)(30)(A) ("Section 30(A)"), the Provider Agreements, and Section 700 of the Rehabilitation Manual,[1] as well as constitutional de-

---

1. The Complaint references Section 530–532, but Defendants' responsive memorandum in-

dicates this reference should be amended to

privations of procedural and substantive due process and equal protection rights.

## II. DISCUSSION

### A. Motion to Dismiss

Our Court of Appeals has often stated the settled standard governing the disposition of a motion to dismiss pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure:

> In general, a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief. In considering a motion to dismiss, the court should accept as true all well pleaded allegations and should view the complaint in a light most favorable to the plaintiff.

*Mylan Laboratories, Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993) (citations omitted); *see also Brooks v. City of Winston–Salem,* 85 F.3d 178, 181 (4th Cir. 1996); *Gardner v. E.I. Dupont De Nemours and Co.,* 939 F.Supp. 471, 475 (S.D.W.Va.1996). It is through this analytical prism the Court evaluates Defendants' motion.

### B. No Private Right of Action for Providers under Section 1396a(a)(30)(A)

■ The initial question is whether Plaintiffs as Medicaid providers, rather than Medicaid recipients, may enforce a Section 30(A) claim under § 1983, or oth-

erwise.[2] Although Plaintiffs do not invoke § 1983, all the major cases to examine a private right of action for providers under Section 30(A) do so in that context. *See Arkansas Med. Soc'y, Inc. v. Reynolds,* 6 F.3d 519, 526 (8th Cir.1993); *Methodist Hospitals, Inc. v. Sullivan,* 91 F.3d 1026, 1029 (7th Cir.1996); *Visiting Nurse Ass'n of North Shore, Inc. v. Bullen,* 93 F.3d 997, 1004 (1st Cir.1996); *Evergreen Presbyterian Ministries, Inc. v. Hood,* 235 F.3d 908, 928–29 (5th Cir.2000); *Pennsylvania Pharmacists Ass'n. v. Houstoun,* 283 F.3d 531, 541–42 (3rd Cir.), *cert. denied,* —— U.S. ——, 123 S.Ct. 100, 154 L.Ed.2d 30 (2002).

In *Gonzaga University v. Doe,* the Supreme Court recently considered the relation between statutory creation of a private right of action and of a right enforceable under § 1983. *Id.,* —— U.S. ——, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002). The Court noted "the inquiries overlap in one meaningful respect—in either case we must first determine whether Congress *intended to create a federal right."* *Id.* at 2275. Culling from both lines of cases, the Court emphasized the necessary focus on the statutory text. For example, there is no private right of action where "a statute by its terms grants no private rights to any identifiable class." *Id.* (quoting *Touche Ross & Co. v. Redington,* 442 U.S. 560, 576, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979)). Where a statute does not include explicit

Section 700. (*See* Mot. in Resp. to Defs.' Mot. to Dismiss at 17–18.)

**2.** This action is not brought under 42 U.S.C. § 1983, but seeks directly to enforce Section 30(A). The test whether a statute confers an implied right of action is given by *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). Under this test, the Court considers (1) whether the plaintiff is within the class " 'for whose especial benefit' the statute was enacted," (2) whether "there [is] any indication of legislative intent, explicit or implicit, either to create such a remedy or deny one," (3) whether a private remedy would be "consistent with the underlying purposes of the legislative scheme," and (4) whether "the cause of action [is] one traditionally relegated to state law, in an area basically the concern of the States." *Id.* at 78, 95 S.Ct. 2080 (citations omitted).

"right- or duty-creating language," an intent to create a private right of action is rarely imputed. *Id.* (citing *Cannon v. University of Chicago,* 441 U.S. 677, 690 n. 13, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979)). An example of such rights-creating language is the "individually focused terminology of Titles VI and IX ('no person shall be subjected to discrimination')". *Id.* at 2277. The existence or absence of rights-creating language is critical to the Court's inquiry. *Id.* (citing *Alexander v. Sandoval,* 532 U.S. 275, 288, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001)). According to the Court, a statute must evince "congressional intent to create new rights," *id.* at 2766 (citing *Alexander,* 532 U.S. at 289, 121 S.Ct. 1511), because "the question is not simply who would benefit from the Act, but whether Congress intended to confer federal rights upon those beneficiaries." *Id.* at 2276–77 (citing *Cannon, supra,* at 690–93 n. 13, 99 S.Ct. 1946). In summary, "where the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action." *Id.* at 2277.

With these principles in mind, the Court examines the text of Section 30(A). Section 30(A) provides a state Medicaid plan must:

> provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan ... as may be necessary to safeguard against unnecessary utilization of such care and services and to assure that payments are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers to that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area[.]

The language is dense and complex, but breaks down into four requirements concerning payments. The state plan must provide methods and procedures to assure that payments to providers produce four outcomes: (1) efficiency, (2) economy, (3) quality of care, and (4) adequate access to providers for Medicaid beneficiaries.

The first two required outcomes, efficiency and economy, relate to the state program, not providers. An indirect effect of these provisions on providers would be to limit the amount of payments, consistent with efficiency. At any rate, no rights for, or duties toward, providers are created by these directives.

As other courts have recognized, the remaining provisions for quality of care and adequate access are "draft[ed] ... with an unmistakable focus on" Medicaid beneficiaries, not providers. *Pennsylvania Pharmacists,* 283 F.3d at 538 (quoting *Cannon,* 441 U.S. at 691, 99 S.Ct. 1946). Enlisting enough providers so that adequate care and services are available to the general population could benefit providers indirectly, but this language creates no duty for states to use certain rate-setting methods or to pay certain rates. If there is a duty here, it would appear to be to beneficiaries, but that question is not presented by this case.[3]

---

**3.** Earlier cases, without the benefit of *Gonzaga 's* clarification of the rights and duties test, looked generally to whether Congress intended a statute to benefit particular plaintiffs. Relying on *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990), *Suter v. Artist M.,* 503 U.S. 347, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992), and *Blessing v. Freestone,* 520 U.S. 329, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997) and applying this less rigorous test, several courts nevertheless held Section 30(A) was not intended to confer ben-

Accordingly, the Court holds Section 30(A) does not provide a private right of action or a right enforceable under § 1983 for Medicaid providers.

### C. Procedural Due Process

■ The Fourteenth Amendment provides no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const., Amend. XIV, § 1. In *Count* II, Plaintiffs allege they have been denied procedural due process by BMS's failure to allow them to challenge the defects in the current rate methodology, develop rules to govern implementation of rate methodology, and provide clarification and technical support regarding the rate methodology. On this basis, they allege Defendants' actions are arbitrary and capricious.

Property interests are not created by the Constitution. "Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Property interests are protected where an individual has a "legitimate claim of entitlement to it." *Roth,* 408 U.S. at 577, 92 S.Ct. 2701. "Procedural due process imposes certain constraints "before an individual is finally deprived of a property interest." *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The essential requirements of due process . . . are notice and an opportunity to respond." *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

According to the Complaint, Plaintiffs are allegedly being deprived of their property interest in a rate methodology that Plaintiffs would find fair, adequate, and

---

efits on Medicaid providers. *Evergreen Presbyterian Ministries, Inc. v. Hood,* 235 F.3d 908, 929 (5th Cir.2001); *Pennsylvania Pharmacists,* 283 F.3d at 541–42.

Several circuits earlier held Section 30(A) did confer on providers a right enforceable under § 1983. *Arkansas Med. Soc'y, Inc. v. Reynolds,* 6 F.3d 519, 526 (8th Cir.1993); *Methodist Hospitals, Inc. v. Sullivan,* 91 F.3d 1026, 1029 (7th Cir.1996); *Visiting Nurse Ass'n of North Shore, Inc. v. Bullen,* 93 F.3d 997, 1004 (1st Cir.1996). Each of these cases was decided before *Blessing* announced a statute must unambiguously confer an "individual entitlement" upon each of the plaintiffs. *Id.,* 520 U.S. at 343–45, 117 S.Ct. 1353.

Also, each of these cases relied on *Wilder* and was decided before Congress repealed the Boren Amendment. The Supreme Court held in *Wilder* that the Boren Amendment, 42 U.S.C. § 1396a(a)(13)(1994)(repealed 1997), provided rights for providers. The Amendment required state plans to provide a class of providers with payments that were "reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities." *Wilder* noted the Amendment "establishe[d] a system for reimbursement of providers and *[was] phrased in terms to benefit health care providers." Wilder,* 496 U.S. at 510, 110 S.Ct. 2510 (emphasis added). As explained above, *Artist M.* and *Blessing* later tightened the who-benefits portion of the *Wilder* test.

Additionally, the language of the Amendment explicitly linked sufficiency of payments to the economic needs of providers. When Congress repealed the Boren Amendment, it expressed its concern to preclude further lawsuits by providers to contest the adequacy of their reimbursement rates. *See* H.R.REP. No. 105–149, at 1230 (1997)("It is the Committee's intention that, following the enactment of [the Balanced Budget Act of 1997], neither this nor any other provision of [§ 1396a] will be interpreted as establishing a cause of action for hospitals and nursing facilities relative to the adequacy of the rates they receive.").

Congress' concern in repeal of the Boren Amendment is consistent with the conclusion, based on statutory analysis, that § 30(A) is not intended to benefit providers.

reasonable. As demonstrated above, however, under the Medicaid statute, Plaintiffs have no *right* to any particular type of rate methodology, that is, no right to any particular methods and procedures for payment of services. They have pointed to no other potential source according them such a right. Because Plaintiffs have no right to the rate methodology they seek in their Complaint, due process guarantees do not attach. Methods of rate calculation may be altered without notice to Plaintiffs and/or an opportunity to be heard without violating the Constitution.[4]

### D. Injunctive Relief

*Count* I requests injunctive relief against BMS based on its alleged failure to develop a rate methodology consistent with federal and state law and the State Medicaid Plan as well as the alleged associated due process violations. Because providers cannot enforce Section 30(A), have no right to any rate-determination methodology, and therefore have no due process rights associated with determination of payment rates, these Plaintiffs may not maintain this action for injunctive relief on those bases.

### E. Substantive Due Process

■ The Supreme Court has held the Fourteenth Amendment also covers a substantive sphere "barring certain government actions regardless of the fairness of the procedures used to implement them." *County of Sacramento v. Lewis*, 523 U.S. 833, 840, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). To violate substantive due process, an executive act must be "fatally arbitrary." *Id.* at 841, 118 S.Ct. 1708. The substantive component of the Due Process

Clause is violated by executive action only when it "can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Id.* at 847, 118 S.Ct. 1708. The Supreme Court further instructs that "[w]here a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide in analyzing these claims." *Id.* at 842, 118 S.Ct. 1708 (citations omitted).

In *Count* III, Plaintiffs complain they have been denied substantive due process because BMS has not promulgated, implemented or applied standards for the rate methodology and its implementation is arbitrary, capricious, and fatally flawed. Arbitrary and capricious governmental acts are barred by requirements of procedural due process, already discussed above. In fact, as the Complaint demonstrates, Defendants have promulgated and implemented and applied a rate methodology, which is set forth in some detail there. Plaintiffs' complaint is actually that they do not believe the methodology employed provides enough payment to keep them providing services. They predict if these rates are maintained, some providers will have to go out of business.

Defendants' acts in applying this rate-determination system are not conscience-shocking or fatally arbitrary so as to invoke substantive due process. Instead, they appear to seek a balance in the tug-of-war provisions of the statute, which require, on the one hand, economy and efficiency and, on the other, quality and quan-

---

4. Chapter 700 of the Medicaid Regulations, §§ 750–756, does provide for administrative review of any adverse administrative action upon a written request for such review. Upon an adverse review decision, an eviden-tiary hearing may be requested. (Mem. in Supp. of Mot. to Dismiss, Ex. 1, 6–7.) This is regulatory review provided by program administrators, however, not a constitutional requirement.

tity of service. At any rate, the statute does not establish the providers' right to a certain payment, but rather the beneficiaries' right to service. Providers' constitutional rights to substantive due process are not violated by Defendants' actions as alleged in the Complaint, and accordingly, this count fails to state a cause of action.

### F. Equal Protection

The Fourteenth Amendment provides no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., Amend. XIV, § 1. There is no allegation Plaintiffs are a protected class, so rational basis or low-level scrutiny applies to the claim. The constitutional safeguard of equal protection is "offended only if the [unequal] classification rests on grounds wholly irrelevant to the achievement of the State's objective." *McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). Government action will not be overturned "unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes" as to be "irrational." *Kimel v. Florida Bd. of Regents,* 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000)(quoting *Vance v. Bradley,* 440 U.S. 93, 97, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979)).

In *Count* IV, Plaintiffs complain that:

74. Defendants have failed to apply the rate methodology, rehabilitation manual and applicable program instructions equally to all providers.[5]

76. Certain adjustments are made by Defendants to adjust the rates for certain providers under the child residential rate methodology, while other providers similarly situated do not receive the same adjustments, resulting in unequal treatment of providers under the rate setting methodology.

77. DHHR and BMS have not equally applied substantive and procedural aspects of the rate setting methodology for children's residential facilities[.]

These allegations appear inconsistent with the factual allegations that a single (flawed) rate-setting methodology is applied to all providers equally and that the inadequacy of the method leads to unfair results. (*See Compl.* ¶¶ 24–35.) Application of one method to all providers does not state an equal protection violation. However, assuming paragraphs 74, 76 and 77 are true, as the Court must on a motion to dismiss, they do state a violation of equal protection rights under the Constitution.

Plaintiffs are directed to file a Second Amended Complaint by Monday, October 21, 2002, which contains only the counts for equal protection and civil rights violation based on equal protection. This Second Amended Complaint should clarify paragraphs 74 through 77, specifying the unequal treatment alleged therein so to eliminate the discrepancy between the factual description of paragraphs 24–35, which describe one method applied equally to all providers, and the allegations of *Count* IV that the method was applied unequally to all providers.

### G. Breach of Contract

*Count* VIII[6] is entitled "Request for Declaratory Judgment [of] Rights under Agreements." The sole statement is that Plaintiffs are entitled to a declaration as to

---

5. Paragraph 75 states: "As a result of deficiencies in the rate setting methodology, providers within the same level of applications of the specific components of the cost setting

methodology." This allegation is incomplete and, as such, is meaningless.

6. This count occurs between *Counts* IV and VI, so it should be renumbered *Count* V.

Plaintiffs' rights under their respective contractual agreements with Defendants. There is no statement as to what contractual agreements exist, the terms of those agreements, or actions alleged to breach the terms. Accordingly, this count fails to state any cause of action and must be **DISMISSED.**

## III. CONCLUSION

*Count* I, requesting injunctive relief, *Count* II, alleging violations of procedural due process, *Count* III, alleging violations of substantive due process, and *Count* VIII(V), requesting a declaration of rights under agreements are **DISMISSED** for failure to state a claim. *Count* IV, alleging a violation of equal rights and *Count* VI, only as it pertains to the equal rights violations, might be actionable, if clarified. Plaintiff is **DIRECTED** to file a Second Amended Complaint by **Monday, October 21, 2002** as explained in § II.F *supra.* Plaintiffs' motion for preliminary injunction is **DENIED** as moot.

The Clerk is directed to send a copy of this Order to counsel of record and publish it on the Court's website at http://www.wvsd.uscourts.gov.